**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BONNY J. BURNSIDE, | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL ASTRUE,[1] | : | |
| Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant. | : | NO. 05-6238 |

## REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                    August 31, 2007

    Bonny J. Burnside ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) and

1383(c), of the final decision of the Commissioner of the Social Security Administration

("Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II of the

Social Security Act ("Act").  *See* 42 U.S.C. §§ 401-433.  Plaintiff has filed a brief in support of her

request for review and the Commissioner has responded to it.  For the reasons set forth below, it is

recommended that Plaintiff's request for review be GRANTED in part and DENIED in part and the

case be REMANDED to the Commissioner for further proceedings consistent with this Report and

Recommendation.

## I. PROCEDURAL HISTORY[2]

    Plaintiff protectively filed this, her third application for DIB on October 23, 2000, based on

lumbar degenerative disease, right carpal tunnel syndrome,[3] right knee degenerative joint disease,[4]

---

[1] Michael J. Astrue, the current Commissioner as of February 12, 2007, has been substituted for Joanne B. Barnhart as the defendant, Commissioner of Social Security, pursuant to Fed. R.Civ.P. 25(d)(1).

[2] I have reviewed and considered the following documents in analyzing this case: Plaintiff's Brief in Support of her Request for Review ("Pl.'s Br."), Defendant's Response ("Def.'s Br.") thereto, and the administrative record ("R."), including all exhibits thereto.

[3] Carpal tunnel syndrome is "compression of the median nerve at the wrist, which may result in numbness, tingling, weakness, or muscle damage in the hand and fingers."  *MedlinePlus* available at  http://www.nlm.nih.gov/medlineplus

sinusitis,[5] irritable bowel syndrome,[6] depression and anxiety that commenced on November 28, 2001, or alternatively, on March 21, 2002.[7]  (R. 354-57, 870, 888).  Her application was denied initially and upon reconsideration.  (R. 36, 41).  Plaintiff requested an administrative hearing, and on January 9, 2002, Plaintiff, represented by counsel, and her husband, Frank Burnside, testified before ALJ Suzanne Strauss at an administrative hearing.  (R. 842-71).  Although Vocational Expert ("VE") Roslyn Sampson-Pierce appeared at the hearing she did not testify.  *Id.*

In a written decision dated June 10, 2002, the ALJ, using the sequential evaluation process,[8]

---

/ency/article/000433.htm#Definition.

[4]Degenerative joint disease "causes the cushioning (cartilage) between the bone joints to wear away, leading to pain and stiffness."  *MedlinePlus* available at  http://www.nlm.nih.gov/medlineplus/ency/article/000423.htm#Definition.

[5]Sinusitis is "inflamation of the sinuses.  This is generally caused by a virus, bacterial or fungal infection."  *MedlinePlus* available at  http://www.nlm.nih.gov/medlineplus/ency/article/000647.htm#Definition.

[6]Irritable bowel syndrome is "a combination of abdominal pain and alternating constipation and diarrhea."  *MedlinePlus* available at  http://www.nlm.nih.gov/medlineplus/ency/article/000246.htm#Definition.

[7] Plaintiff's prior DIB application, dated January 9, 1997, was denied at the initial level.  (R. 887).  Plaintiff did not request further review of the administrative decision, thus, she cannot be found disabled for that period under the doctrine of *res judicata*.  *See* 20 C.F.R. § 404.957(c)(1)(2005).  A second application for DIB benefits filed on January 26, 1998, also  was denied initially and upon reconsideration.  (R. 887).  After administrative hearings on September 16 and December 10, 1998, on July 19, 1999 Administrative Law Judge ("ALJ") Newberger issued a decision finding Plaintiff not disabled.  *Id.*  The Appeals Council declined review on July 27, 2000.  *Id.*

[8]  The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not a claimant is disabled:

> 1.  If claimant is working, doing substantial activity, a finding of not disabled is directed.  Otherwise proceed to Step 2.  *See* 20 CFR § 404.1520(b);
>
> 2.  If claimant is found not to have a severe impairment which significantly limits his or her physical or mental ability to do basic work activity, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 CFR § 404.1520(c);
>
> 3.  If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 CFR, a finding of disabled is directed.  Otherwise proceed to Step 4.  *See* 20 CFR § 404.1520(d);
>
> 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed.  Otherwise proceed to Step 5.  *See* 20 CFR § 404.1520(f); and
>
> 5.  The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, he is or is not disabled.  *See* 20 CFR § 404.1520(g).

concluded that Plaintiff had the residual functional capacity[9] to perform the full range of light work,[10] and, thus, was not "disabled," as defined by the Act, at any time through the date of the ALJ's decision. (R.18-30). The Appeals Council, on March 12, 2003, declined Plaintiff's request for review, rendering the ALJ's unfavorable decision the final decision of the Commissioner. (R. 11-12). Plaintiff appealed that decision to this court and, on November 21, 2003, the Honorable R. Barclay Surrick granted the Commissioner's request for a remand. *See* Pl.'s Br. at 3.

At a May 25, 2004 hearing, Plaintiff and a VE, Dr. Carolyn Rutherford, testified before ALJ Strauss. (R. 1004-26). In a decision dated April 2, 2005, (R. 887-900), the ALJ found Plaintiff not disabled, because, she retained the ability to perform an adequate range of sedentary work.[11] (R. 899). Plaintiff now seeks judicial review of the Commissioner's final determination. This case was referred to the undersigned by the Honorable R. Barclay Surrick, under the authority of 28 U.S.C. § 636(b)(1)(B), for a report and recommendation.

## II.  FACTUAL BACKGROUND

### A.  Personal and Work History

Plaintiff, born on September 21, 1952, was forty-nine and one-half years old at the time her insured status expired on March 31, 2002 and, therefore, a "younger individual."[12] (R. 853, 889). She has a high school education and past relevant work experience as a mail person, assembly line worker, cleaner, and teacher's aide.  (R. 59-61, 372, 380-81, 1021).

### B.  Administrative Hearings Testimony

---

[9] Residual functional capacity ("RFC"), is what a social security claimant is able to do despite his or her limitations. *See* 20 C.F.R. § 404.1545(a).

[10] "Light work involves lifting no more that 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

[11] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

[12] "If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work." 20 C.F.R. § 404.1563(c).

1. <u>January 9, 2002 Administrative Hearing</u>

    a. Plaintiff's Testimony

Plaintiff testified that she resides in a two-story home with her husband and twenty-five-year-old son. (R. 854). She described depression, (R. 861), constant throbbing back pain, (R. 846, 857), knee pain, (R. 846, 859-60), carpal tunnel syndrome of the right hand, (R. 857), irritable bowel syndrome, (R. 847-48), arthritis, (R. 849), allergies, (R. 848), and insomnia. (R. 860, 861). Plaintiff testified that she has difficulty sleeping at night. (R. 860). She said that her back pain subsided for two days following epidural shots. (R. 862).

Plaintiff testified that she can lift only five pounds and has difficulty writing because of her carpal tunnel syndrome. (R. 858, 864). She cannot move her left wrist even after wrist surgery on July 7, 1992. (R. 858-59). She complained that her right knee buckles and, some days, she cannot walk; she endures pain when she sits, stands or walks. (R. 859). Leaning helps her sit for half and hour; she can stand for fifteen minutes and walks only short distances with the assistance of a cane. (R. 864). Plaintiff no longer is able to crochet or perform many household chores. (R. 863). She does maintain good personal hygiene, dress herself, feed the cat and cook. (R. 864). She spends her days watching television, lying on her stomach to relieve her back pain, and napping for two hours. (R. 865).

    b. Frank Burnside's Testimony

Plaintiff's husband, Frank Burnside, testified that his wife's condition has worsened and that he works during the day but performs most of the household chores. (R. 867-68). At home he sees Plaintiff sitting in a lounge chair. (R. 869). He stated that Plaintiff attends movies with her mother and sister, but cannot crochet due to wrist pain. *Id*.

2. <u>January 20, 2005 Administrative Hearing</u>

At her second administrative hearing, Plaintiff weighed two hundred and sixty (260) pounds, (R. 1019); she testified that the spinal cord stimulator inserted in her back in January 2002 did not alleviate her back pain. (R. 1007). She complained of pain and numbness in her hips and both legs radiating to her toes; her legs collapse and she falls when walking. (R. 1007-09). Plaintiff uses a four-pronged cane to help her maintain balance. (R. 1017-18). Constant pain and swelling in her right knee preclude walking or standing for a long period. (R. 1010, 1013). Although right carpal tunnel release surgery on January 14, 2002 initially improved her pain; the pain later worsened and she experienced soreness, tingling, and pain shooting up her right arm that caused her to drop objects. (R. 1011, 1014). She felt pain in her left elbow and frozen left wrist. (R. 1020). Her insomnia had worsened and she often slept only two to three hours a night. (R. 1019).

Plaintiff admitted that Zelnorm,[13] ( medication for irritable bowel syndrome), Xanax[14] and Prosac[15] (medication for her depression and anxiety) were effective. (R. 1014-15). She cannot take aspirin because it irritates her stomach and Salsalate[16] did not block her arthritic pain. (R. 1017). Plaintiff denied experiencing any side-effects from her current medications. (R. 1019).

## C.    Medical History

On January 31, 2000, Richard D. Gordon, M.D., a Rheumatologist, examined Plaintiff's right knee. (R. 444-45). He interpreted an MRI report completed on October 20, 1999 as showing

---

[13]Zelnorm helps " to relieve pain, bloating, and constipation caused by irritable bowel syndrome in women whose main symptom is constipation." *MedlinePlus* available at http://www.nlm.nih.gov/medlineplus/druginfo/medmaster /a604007.html.

[14]Xanax is used "to treat anxiety disorders and panic attacks." *MedlinePlus* available at http://www.nlm. nih.gov/medlineplus/druginfo/medmaster/a684001.html.

[15]Prosac is used "to treat depression, obsessive-compulsive disorder, panic attacks." *MedlinePlus* available at http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a689006.html.

[16]Salsalate is used "to relieve mild pain, to reduce fever, and to reduce the pain and inflammation (swelling) caused by arthritis or other inflammatory conditions." *MedlinePlus* available at http://www.nlm.nih.gov/medlineplus/druginfo /medmaster/a682880.html.

a small osteochondral lesion in the subchondral portion of the medial femoral condyle with moderate joint effusion.  (R. 444).  Dr. Gordon saw Plaintiff ambulate very slowly and need assistance getting on and off the examination table.  *Id.*  His diagnosis was osteoarthritis of the right knee; he  prescribed 25 mg of Vioxx[17] to replace the Salsalate, continued her on Cyotec,[18] and suggested a repeat MRI of her right knee.  (R. 445).  The February 1, 2000 MRI of Plaintiff's right knee still showed a small osteochondral tear, a moderate and  much larger joint effusion, and a popliteal cyst.  (R. 481, 810).  On March 16, 2000, Plaintiff complained of knee pain, was encouraged to loose weight and advised to consult an orthopedist.  (R. 495).

On March 28, 2000, Dr. Robert M. Ruth treated Plaintiff's right knee pain.  He diagnosed a symptomatic osteochondral injury with degenerative joint disease and recommended arthroscopic evaluation.  (R. 459, 780).  On March 29, 2000, objectively, Dr. Ruth found moderate swelling and medial joint line tenderness.  (R. 458).  Plaintiff underwent arthroscopic surgery of her right knee on April 18, 2000.  (R. 596-601).  On April 21 and April 28, 2000, Dr. Stollsteimer examined Plaintiff and noted that she still had mild effusion in her right knee; he recommended increased physical activity and continued stretching and strengthening exercises.  (R. 455-56).  On May 26, 2000, Plaintiff was "doing well," despite her complaint of pain.  (R. 453).  Dr. Stollsteimer recommended continued gentle activity and use of a cane as needed; but discouraged total knee replacement because of her age.  *Id.*  One month later Plaintiff's right knee was still swollen and evidenced patellofemoral creptius with no evidence of DVT.[19]  (R. 452).  In September 2000,

---

[17]Vioxx "is used to relieve the pain, tenderness, inflammation (swelling), and stiffness caused by arthritis and to treat painful menstrual periods and pain from other causes."  *MedlinePlus* available at http://www.nlm.nih.gov/medlineplusm /druginfo/medmaster/a699046.html

[18]Cyotec is "used to prevent ulcers in people who take certain arthritis or pain medicines, including aspirin, that can cause ulcers. It protects the stomach lining and decreases stomach acid secretion."  *MedlinePlus* available at http://www.nlm .nih.gov/medlineplus/druginfo/medmaster/a689009.html

[19]DVT is "a condition in which a blood clot forms in a vein that is deep inside the body."  *MedlinePlus* available at http://www.nlm.nih.gov/medlineplus/ency/article/000156.htm#Definition.

Plaintiff weighed 263 pounds and was taking depression and anxiety medications, and had taken three injections of Synvisc[20] in her right knee. (R. 491, 760-62).

By January 11, 2001, Plaintiff weighed nine pounds more and had right knee and left elbow pain; she was encouraged to diet, and follow-up with her orthopedic doctor. (R. 769). On January 16, 2001, she complained to Dr. Stollsteimer of left lateral elbow pain and daily right knee pain. (R. 758). Dr. Stollsteimer diagnosed left lateral epicondylitis and right knee degenerative joint disease; he injected Plaintiff with Lidocane[21] and Depomedrol.[22] (R. 758-59, 787).

In February and March 2001, Dr. Joel Jaffe treated Plaintiff for a recurrent sinus infection and a small cyst in her right maxillary sinus. (R. 734). A March 5, 2001 CT scan showed significant mucoperiosteal thickening in both maxillary sinuses and progressed sinus disease. (R. 737). However, Dr. Jaffe opined that Plaintiff did not suffer from significant chronic sinusitis. (R. 717). By April 12, 2001, Plaintiff had dropped to 269 pounds, used a quad cane, had sinus symptoms, and felt ongoing knee, low back, wrist, and elbow pain; her Salsalate dosage was increased. (R. 767).

From May 1, 2001 through September 6, 2001, Plaintiff's low back pain was treated by Dr. Frederic H. Goldberg at Temple's Pain Management Center with steroid injections. (R. 795-800, 807-08). Plaintiff stated that the injections only provided temporary relief of her back pain (R. 795-98); Dr. Goldberg could offer no further intervention. (R. 795).

On May 15, 2001, Dr. Stollsteimer treated Plaintiff for left elbow and right knee pain and right hand numbness; he discussed surgical options. (R. 786). A May 24, 2001 lumbar MRI report

---

[20]Synvisc is used "to provide pain relief from osteoarthritis of the knee." Available at http://www.synvisc.com/about SYNVISC/ussyn_pt_aboutSYNVISC.aspx.

[21]Lidocane is often "used to treat the pain of a sore or irritated mouth and throat often associated with cancer chemotherapy and certain medical procedures." *MedlinePlus* available at http://www.nlm.nih.gov/medlineplus /druginfo/medmaster /a682701.html.

[22]Depomedrol is "used to relieve inflamation." *MedlinePlus* available at http://www.nlm.nih.gov/ medlineplus/druginfo/ medmaster/a601157.html.

showed a right hemilaminectomy at L5-S1, with no disc herniations.  (R. 771).  On June 13, 2001, Dr. Steven E. Mazlin diagnosed Plaintiff with right carpal tunnel syndrome that may need surgical intervention if steroid injections proved unsuccessful.  (R. 782-83).  On June 14, 2001, Plaintiff felt back and left elbow pain; she was advised to continue her medications, attempt epidural steroids, and orthopedic evaluation.  (R. 766).  On June 26, 2001, Lidocaine and Celestone injections were given; wrist and total knee replacement surgery were discussed.  (R. 784).  On September 13, 2001, Plaintiff weighed 266 pounds, was treated for back pain, continued on her medications, and was recommended for pain evaluation.  (R. 765).  At her October 15, 2001 visit, Plaintiff had swollen legs with throbbing pain.  (R. 763).

The Thomas Jefferson Pain Center treated Plaintiff on November 28, 2001 for constant throbbing and stabbing back pain that increased when she laid down on her back, walked, stood or sat.  (R. 825).  Dr. Even Frank examined Plaintiff and suspected neuropathic not  mechanical low back pain that could benefit from a spinal cord stimulator and Botox injections.  (R. 818-19).  Accordingly, on December 6, 2001 and January 10, 2002, Plaintiff underwent lumbar steroid injections.  (R. 820, 822-23).

Following her January 14, 2002 carpal tunnel release surgery, Plaintiff denied any numbness in her right hand; her pain and symptoms had improved.  (R. 935).  Dr. Frank re-examined Plaintiff on February 11, 2002, maintained medication management, noting her medication sensitivities, prescribed 150 mg of Trileptal[23] daily, and referred her to Dr. Mazlin for her balance and instability problems.  (R. 816).  By February 28, 2002, the strength in Plaintiff's right hand had increased; home therapy continued.  (R. 934).

---

[23]Trileptal is commonly used to treat certain types of epileptic seizures.  *MedlinePlus* available at http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a601245.html.

Dr. Mazlin, on March 4, 2002, ordered a lumbar MRI and neuroelctrodiagnostic testing. (R. 931-32, 941). That MRI report showed no recurrent disc herniation, a mild right L5 disc bulge putting mild pressure on the right L5 nerve root, and a new small disc protrusion at L3-4. (R. 941). On April 2, 2002, Dr. Mazlin diagnosed chronic L5 radiculopathy bilaterally, but was unsure of the reason for Plaintiff's back pain. (R. 929-30). On June 17, 2002, Dr. Andrew Freese, a neurosurgeon, diagnosed discogenic back pain, discouraged surgery, and recommended back IDET[24] or similar procedures. At her June 24, 2002 checkup, Plaintiff weighed 268 pounds, used a quad cane, and complained of more back problems. (R. 983). A July 19, 2002 lumbar MRI report confirmed mild degenerative desiccation of the L4 and L5-S1 discs, with a mild annular bulge, and mild bilateral neural foraminal encroachment by the bulge and by accentuation of the lumbosacral angle. (R. 940). From December 26, 2002 through January 2, 2003, Plaintiff used a spinal cord stimulator which produced an 80% reduction of pain, without side effects; Plaintiff stated that emotionally she felt improved.

On May 13, 2003, Dr. Frank implanted a permanent spinal cord stimulator. (R. 952, 971-73). On June 13, 2003, Plaintiff reported that the stimulation was excellent and substantially relieved her pain. (R. 947). An October 13, 2003 right knee x-ray showed minimal degenerative changes, with small osteophytes, but no joint effusion. (R. 987). The following week, Plaintiff was walking with an cane and an antalgic gait; she stated that her back pain had decreased using the spinal cord stimulator. (R. 969-70). On January 20, 2004, Dr. Frank found Plaintiff had a new area of left sided low back pain, but she was receiving good relief from the spinal cord stimulator, her depression was stable, and, overall, he was pleased with her progress. (R. 967).

---

[24]IDET is "a minimally invasive treatment in which controlled levels of heat are applied to sections of the damaged disk wall. The heat causes the collagen in the disk wall to contract and thicken. The temperature of the nerve endings in the disk wall also is raised, numbing the nerves." Available at http://www.clevelandclinic.org/health /health-info/docs /2000/2047.asp?index=8298.

**D.     Consultative Examinations**

1. Mental Assessments

A Psychiatric Review Technique, completed on March 10, 1998 on behalf of the state agency, indicated that Plaintiff did not have any psychological impairments.  (R. 211-19).

On January 19, 2001, Komal Saraf, Ph.D., completed a Clinical Psychological Disability Evaluation after examining Plaintiff on January 8, 2001.  (R. 532-36).  Plaintiff appeared anxious and tense, and expressed a great deal of mental anguish while discussing her physical ailments.  (R. 532-33).  Dr. Saraf noted that Plaintiff's affect was flat, she was agitated, sad, depressed, and felt helpless due to her medical problems.  (R. 534).  He diagnosed anxiety and depression secondary to medical conditions; Plaintiff's prognosis was guarded because of her multiple medical conditions and long history of depression and anxiety.  (R. 534).  Dr. Saraf assessed that Plaintiff had fair ability to deal with work stresses, function independently, maintain attention/concentration, understand, remember and carry out complex job instructions.  (R. 535).  Plaintiff's memory was intact, impulse controls, social judgement and reality testing were good.  *Id.*

On January 30, 2001, Christopher King, Psy D., completed a Psychiatric Review Technique on behalf of the state agency.  (R. 537-54).  Dr. King diagnosed anxiety and depression related to Plaintiff's physical/medical conditions.  (R. 540, 549).   He noted mild restriction of activities of daily living and moderate difficulties in maintaining concentration, persistence or pace.  (R. 547, 551-53).

2. Physical Assessments

On February 12, 1998, V. H. Popat, M.D., completed a Physical Residual Functional Capacity evaluation on behalf of the state agency.  (R. 220-27).  He assessed that Plaintiff could

occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, sit, stand and/or walk six hour, and push/pull without restriction. (R. 221). Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl; she had no manipulative, visual, communicative, and environmental restrictions. (R. 222).

On January 30, 1999, David Weiss, D.O., examined Plaintiff on behalf of the state agency. (R. 324-26).  He diagnosed status post herniated nucleus pulposous L5-S1, status post lumbar laminectomy and discectomy, bulging lumbar disc L4-L5 and right lumbar radiculopathy. (R. 326). Dr. Weiss considered Plaintiff unable to perform her prior work; she had difficulty sleeping, sitting more than half an hour, standing or walking more than fifteen minutes, performing repetitive bending, and lifting over fifteen pounds. (R. 324). Dr. Weiss recommended Plaintiff obtain an x-ray of her lumbar spine.

Dr. Luigi Desantis, M.D., examined Plaintiff on behalf of the state agency on March 10, 2001.  (R. 555-57).  Plaintiff was unable to toe or heel walk, her left knee showed crepitus with decreased ranges of motion, she had decreased mobility of her left wrist, and her left elbow showed medial and lateral epicondyle tenderness.  (R. 556-57).  Dr. Desantis noted that Plaintiff was on multiple medications for depression and anxiety, experienced stiffness throughout the day, had decreased range of motion of multiple joints, and a slightly antalgic gait.  (R. 557).

On April 4, 2001, Michael Slothower, DCA, completed a Physical Capacity Assessment on behalf of the state agency.  (R. 560-67).  This evaluator found spondylolisthesis L5-S1, degenerative joint disease of the right knee, depression and hypertension.  (R. 560).  He opined Plaintiff could occasionally lift/carry ten pounds, frequently left less than ten pounds, stand and/or walk for two hours, sit for six hours, and push/pull without restriction.  (R. 561).  Plaintiff could occasionally

climb, balance, stoop, kneel, crouch, and crawl; he imposed no manipulative, visual, communicative, or environmental restrictions.  (R. 562-64).  He described Plaintiff's subjective complaints as partially credible.  (R. 565).

**E.**    **Vocational Testimony**

At the May 25, 2004 administrative hearing, the ALJ elicited testimony from VE Rutherford to determine if jobs exist in the national and local economies that a person of Plaintiff's age, education, and physical limitations could perform.  (R. 1021-25).  The VE classified Plaintiff's prior relevant work as a mail clerk as unskilled[25] and heavy;[26] the cleaner position as unskilled and medium,[27] the teacher's aide job as semiskilled[28] and light,[29] and the assembler position as unskilled at a medium level of exertion.  (R. 1021).  The VE testified that a hypothetical individual who could occasionally lift ten pounds, frequently lift and carry less than ten pounds, stand/walk for two hours, sit for six hours, and frequently climb, balance, stoop, kneel, crouch and crawl could not perform any of Plaintiff's above-mentioned past relevant work; but, could perform unskilled sedentary work.  (R. 1023-24).  If the hypothetical individual needed to lie down for an hour or two each day he could not work on a sustained basis.  (R. 1024).  Furthermore, an individual who was limited to sedentary work without use of their dominant hand would be excluded from performing at least eighty percent of all unskilled sedentary positions available.  (R. 1025).

---

[25] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(c).

[26] "Heavy work involved lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work."  20 C.F.R. § 404.1567(d).

[27] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

[28] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties."  20 C.F.R. § 404.1568(b).

[29] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b) .

### III.  THE ALJ'S DECISION

After the hearing and upon review of the record, the ALJ issued the following relevant findings:

3.      Prior to and or her date last insured, the [Plaintiff's] lumbar degenerative disc disease, degenerative joint disease of the right knee, and right carpal tunnel syndrome were considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).  Her obesity was an aggravating factor relative to her orthopedic impairments (SSR 02-1p).

4.      Prior to and on her date last insured, these medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No.4.

5.      The undersigned finds the [Plaintiff's] allegations regarding her limitations are not totally credible, as relating through her date last insured, for the reasons set forth in the body of the decision.

6.      Prior to and or her date last insured, the [Plaintiff] had the residual functional capacity to lift and carry 10 pounds; sit at least six hours in an eight-hour workday; and stand and walk up to two hours in an eight-hour workday, using a cane if necessary.

7.      Prior to and on her date last insured, the [Plaintiff] was unable to perform any of her past relevant work.  (20 CFR § 404.1565).

8.      Prior to and on her date last insured, the [Plaintiff] was a "younger individual" (20 CFR § 404.1563).

9.      The [Plaintiff] has a "high school or (high school equivalent) education"(20 CFR § 404.1564).

10.     The [Plaintiff] has no transferrable skills from any past relevant work and/or transferability of skills was not determinative prior to and on her date last insured (20 CFR § 404.1568).

11.     Prior to and on her date last insured, the [Plaintiff] had the residual functional capacity to perform the full range of sedentary work (20 CFR § 404.1567).

12.     Based on an exertional capacity for sedentary work, and the [Plaintiff's] age, education, and work experience, a finding of "not disabled" during the period at issue is directed by Medical-Vocation Rule 201.21 and 201.22.

13.     The [Plaintiff] was not under a "disability" as defined in the Social Security Act, at any time through her date last insured (20 CFR § 404.1520(g)).

(R. 898-900).

## IV.  DISCUSSION

### A.     Standard of Judicial Review

The role of this court upon judicial review is to determine if substantial evidence in the administrative record supports the Commissioner's final decision.  *See Stunkard v. Sec'y of Health and Human Serv.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*citations omitted*).  It is more than a mere scintilla of evidence but may be less than a preponderance.  *See Stunkard*, 841 F.2d at 59.  It is the responsibility of the ALJ to resolve conflicts in the evidence, determine credibility of witnesses and weigh the evidence presented.  *See Richardson*, 402 U.S. at 401.  This court's review is not *de novo*, and the evidence of record will not be weighed a second time.  *See Monsour Medical Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  The Commissioner's legal conclusions are subject to plenary review. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

### B.     Burden of Proof in Disability Proceedings

In order to be found "disabled" under the Act, a Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (a) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, App. 1; or (b) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423 (d)(2)(A).

Under the first method, a Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. Under the second method, a Plaintiff must initially demonstrate that a medically determinable disability prevents her from returning to employment. *See Brown v. Bowen*, 845 F.2d 1211, 1214 (3d Cir. 1988). If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff is capable of performing given his or her age, education, and work experience. *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). This is a twofold analysis. First, the Commissioner must evaluate the Plaintiff's job qualifications such as physical ability, age, education, and work experience. *See* 42 U.S.C. § 423 (d)(2)(A); 20 C.F.R. § 404.1520(f). Second, the Commissioner must consider, given Plaintiff's qualifications, whether jobs exist in the national economy that a similarly situated person could perform. *See* 20 C.F.R. § 404.1520(g).

**C.      Review of the Administrative Law Judge's Decision**

Plaintiff seeks reversal of the ALJ's decision and an award of benefits on five grounds: (1) the ALJ ignored her exertional and nonexertional limitations, (2) the ALJ erred in finding that she could perform the full range of sedentary work; (3) the ALJ erred in not calling a medical expert to testify about Plaintiff's onset date of disability; (4) the ALJ applied the wrong standard for assessing her RFC in a borderline age situation; and (5) the ALJ improperly discounted her credible complaints of pain. *See* Plaintiff's Brief and Statement of Issues in Support of Plaintiff's Request for Review Pl.'s Br. at 5-30. The Commissioner urges affirmance of the ALJ's decision. *See* Def.'s Br. at 3-28.

1. The ALJ Improperly Relied on the Medical Vocational Grids[30]

Plaintiff contends that the ALJ inappropriately relied upon Medical-Vocational Rule 201.21 and 201.22 ("Grids") to evaluate her disability, because she has both exertional and nonexertional impairments. Pl.'s Br. at 6-13. The ALJ found Plaintiff's lumbar degenerative disc disease, degenerative joint disease of the right knee, right carpal tunnel syndrome to be severe impairments and that obesity aggravated her orthopedic impairments. (R. 899). However, the ALJ discredited all of Plaintiff's other ailments and found that she suffered from no nonexertional limitations. The record does not support the ALJ's exclusion of all nonexertional limitations.

If a claimant has any nonexertional, or a combination of exertional and nonexertional impairments, the Commissioner cannot rely upon the grids, but rather, must rebut the claimant's evidence by using a vocational expert or other evidence. *See* 20 C.F.R. § 404.1569a(d)*; Sykes v. Apfel*, 228 F. 2d 259, 259, 273 (3d Cir. 2000). The relevant portion of the applicable regulation provides:

---

[30]Plaintiff further argues that the ALJ improperly applied the grids for a "younger person" with an RFC for sedentary work instead of as an individual "closely approaching advanced age." Pl.'s Br. at 24-28. Since this court has determined that the grids should not have been at all since Plaintiff has both exertional and nonexertional impairments, this issue need not be discussed.

Combined exertional[31] and nonexertional[32] limitations. When the

> limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect your ability to meet both the strength and demands of jobs other than the strength demands, we consider that you have a combination of exertional and nonexertional limitations or restrictions. If your impairment(s) and related symptoms, such as pain, affect your ability to meet both the strength and demands of jobs other than the strength demands, we will not directly apply the rules in appendix 2 unless there is a rule that directs a conclusion that you are disabled based upon your strength limitations; otherwise the rules provide a framework to guide our decision.

20 C.F.R. § 404.1569a(d).  Combined limitations preclude reliance on the grids in this case.

The evidence of record clearly establishes that Plaintiff suffers from lumbar degenerative disc disease, (R.771, 767, 795-800, 807-08), degenerative joint disease of the right knee, (R. 445, 453, 459, 758-59, 767, 769, 786), right carpal tunnel syndrome, (R. 758-59, 767, 784, 786), obesity, (R. 491, 495, 769), and depression and anxiety.  (R.491-92).  Both Dr. V. H. Popat and DCA Michael

---

[31]Exertional limitations:

> When the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect only your ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling), we consider that you have only exertional limitations. When your impairment(s) and related symptoms only impose exertional limitations and your specific vocational profile is listed in a rule contained in appendix 2 of this subpart, we will directly apply that rule to decide whether you are disabled.

20 C.F.R. § 404.1569a (b).

[32]Nonexertional limitations:

> (1) When the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect only your ability to meet the demands of jobs other than the strength demands, we consider that you have only nonexertional limitations or restrictions. Some examples of nonexertional limitations or restrictions include . . . (v) . . . difficulty tolerating some physical feature(s) of certain work settings, e.g., you cannot tolerate dust or fumes; or (vi) . . . difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.
>
> (2) If your impairment(s) and related symptoms, such as pain, only affect your ability to perform the nonexertional aspects of work-related activities, the rules in appendix 2 do not direct factual conclusions of disabled or not disabled. The determination as to whether disability exists will be based on the principles in the appropriate sections of the regulations, giving consideration to the rules for specific case situations in appendix 2.

*Id.* at 1569 a(c).

Slothower specifically restricted Plaintiff to occasional postural activities.   (R. 222, 562).  Thus, unless properly discredited, said restrictions preclude use of the grids.

The ALJ permissibly rejected DCA Slothower's postural limitations, because he is not a physician.  However, the ALJ also rejected Dr. Popat's postural restrictions, on the ground that Plaintiff's April 18, 2000 knee surgery alleviated the need for any postural restrictions.  (R. 895-96). The Commissioner or ALJ is free to reject, any physician's assessment if: (1) contrary medical evidence exists, *see Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988); or (2) insufficient clinical data supports it.  *See Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985).  The ALJ, in this case, rejected Dr. Popat's assessment based on lay belief, without contrary medical evidence to establish what postures Plaintiff could perform post-surgery.  Objective evidence shows that after her knee surgery, Plaintiff still walked using a cane and experienced ongoing knee pain, tenderness, and swelling.  (R. 758-62, 767, 763, 784, 818-19).  No physician opined that all physical restrictions were lifted post surgery.  Indeed, Plaintiff's degenerative joint disease of the right knee, by itself, supports the postural and nonexertional limitations set by state evaluators Dr. Popat (R. 222) and Mr. Slothower.   (R. 562).   Accordingly, the ALJ improperly discredited Dr. Popat's report.  Upon remand even non-severe physicial non-exertional complaints must be considered and credited or properly contradicted with medical evidence.

Additionally, Plaintiff's mental nonexertional impairments eroded her job base.  State agency Drs. King and Saraf deemed Plaintiff limited in her ability to maintain persistence and pace as a result of her mental impairments.  (R. 535-36, 547, 551-52).  Dr. King diagnosed Plaintiff with anxiety and depression secondary to her medical conditions.  (R. 534).  Consistent with this diagnosis, Plaintiff's primary care physicians, Dr. Madder, prescribed Prozac and Xanax.  (R. 491-

-18-

92).  Yet, the ALJ discredited Dr. King's limitation, finding that it was based solely upon Plaintiff's subjkective complaints.  (R. 892).  At the May 25, 2004 hearing, Plaintiff testified that her depression and anxiety medications help relieve her nervousness and so she would not "snap at people as much as [she] used to snap at people." (R. 1016).  Plaintiff did not testify that medication alleviated all of her psychological symptoms.  The findings of Dr. King that Plaintiff's anxiety and depression cause moderate non-exertional impairments precludes the ALJ from reliance upon the grids.

Likewise, Dr. Saraf assessed that Plaintiff had only "fair" ability to cope with work stresses, function independently, and maintain attention and concentration.  (R. 535).  The ALJ discussed other findings of Dr. Saraf, but failed to even mention these non-exertional restrictions.  This oversight alone necessitates remand.  The ALJ used her lay opinion, upon examination of the record, to discredit the findings of Dr. King while ignoring and all of the mental restrictions imposed by Dr. Saraf.  decision is not supported by substantial evidence.  Upon remand, the ALJ shall reconsider all of Plaintiff's exertional and nonexertional impairments and consault a VE, to help determine what jobs, if any, exist in the national and regional economy that Plaintiff retains the capacity to perform.

2.  The ALJ's RFC Analysis is Flawed

Plaintiff contends that the ALJ's determination that she retains the capacity to perform the full range sedentary work is inaccurate.  *See* Pl.'s Br. at 14-17.  This court agrees.  Since, the ALJ did not accurately assess Plaintiff's nonexertional limitations, her RFC analysis is flawed.  *See supra* p. 17-19.  The record fails to substantiate the ALJ's finding that Plaintiff can perform either the full range of postures required for sedentary work or meet the mental requirements, including concentration, persistence and pace.  Upon remand, the ALJ shall reassess Plaintiff's RFC, taking

into consideration all of her credible limitations, consulting a medical expert, if necessary, to evaluate Plaintiff's postural limitations.

      3.  <u>The ALJ Was Not Required to Retain a Medical Expert to Testify</u>

Plaintiff contends that, in accordance to Social Security Ruling 83-20 ("SSR 83-20"), a medical expert ("ME") should have testified at the administrative hearing to provide an onset date of disability had to be inferred by the ALJ. Pl.'s Br. at 19-24. SSR 83-20 requires such testimony when a Plaintiff's onset date of disability must be inferred and the ALJ cannot rely on the onset date of disability urged by Plaintiff. Specifically, the onset date of a disability must be inferred by a medical advisor when "the alleged impairment was a slowing progressing one, the alleged onset date was far in the past, and adequate medical records for the most relevant period were not available." *Newell v. Comm'r of Soc. Sec. Admin.*, 347 F.3d 541, 549 (3d. Cir. 2003) (citing *Walton v. Halter*, 243 F.3d 703, 709 (3d Cir. 2001)). Although Plaintiff's impairments are slowly progressing ailments, and the alleged onset dates suggested by Plaintiff are November 28, 2001 and March 21, 2002, are somewhat remote in time, relevant medical records for this period were fully available for the ALJ to review. Moreover, since the ALJ did not find Plaintiff to be disabled at any time during the relevant period, (R. 899), the ALJ did not need to infer an onset date of disability and SSR 83-20 would not apply.

      4.  <u>The ALJ Should Re-assess Plaintiff's Credibility</u>

To be credible, subjective complaints of pain must bear some relationship to the claimant's physical status, as demonstrated by objective medical findings, diagnoses, and opinions. *See Baerga v. Richardson,* 500 F.2d 309 (3d Cir. 1974), *cert. denied*, 420 U.S. 931 (1975); *see also* 20 C.F.R. §416.929. An ALJ may discredit a claimant's subjective complaints when: (1) there is contrary

medical evidence in the record, and (2) the ALJ explains the basis for rejecting the complaints.  *See*

*Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993).  If medical signs or laboratory findings show

that claimant has a medically determinable impairment that could produce pain, the ALJ must

consider all available evidence, including claimant's statements, to determine whether and how the

symptoms limit claimant's capacity to work.  *See* 20 C.F.R. § 404.1529(c)(1).

Relevant factors in evaluating subjective complaints of pain include: Plaintiff's daily

activities; the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms;

precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any

medication Plaintiff takes or has taken to alleviate her pain or other symptoms; treatment, other than

medication, Plaintiff receives or has received for relief of pain or other symptoms; any measures

Plaintiff uses or has used to relieve pain or other symptoms*;* and other factors concerning functional

limitations and restrictions due to pain or symptoms.  *See* 20 C.F.R. § 404.1529(c)(3); SSR 96-7p.

The ALJ discredited Plaintiff's allegations of disabling pain, finding that her subjective

complaints "were not reasonably supported by the objective medical evidence." (R. 895).  The ALJ

relies upon Plaintiff's testimony that her medications do not cause her to experience "work-

preclusive side-effects."  *Id*.  The ALJ further found that Plaintiff's complaints of pain increased

after she was advised of the date of her upcoming Social Security Hearing.  First, the ALJ was

incorrect in finding that the record indicated that Plaintiff's pain increased after she was notified on

December 3, 2001, (R. 340-44), of the date of her Social Security Hearing.  Plaintiff was referred

to Dr. Frank, a pain management specialist, in September 2001.  (R. 795).  Dr. Frank examined her

on November 28, 2001, (R. 824-32), and transcribed his report on December 12, 2001.  (R. 818).

Clearly, Plaintiff's allegations of increased pain preceded notification of the upcoming December

2001 hearing.  Second, since Plaintiff has degenerative ailments, it is improper to discredit her because, from September 2001 to March 2002 (six months), her subjective symptoms and concomitant restrictions increased.  *See Stover v. Shalala*, 1995 WL 327981, *6 (E.D. Pa. May 31, 1995) (citing *Gilliland v. Heckler*, 786 F.2d 178, 184 (3d Cir.1986)).   Upon remand the ALJ shall reassess Plaintiff's credibility.

## V.  CONCLUSION

After a thorough review of the record, this court finds that this case should be remanded.  The ALJ's analysis was partially inconsistent with applicable regulations and Third Circuit law. Accordingly, I make the following:

## **RECOMMENDATION**

AND NOW, this 31st day of August 2007, it is respectfully recommended that:

(1)    The Report and Recommendation be APPROVED and ADOPTED;

(2)    The Plaintiff's Motion for Summary Judgment be GRANTED in part and DENIED in part;

(3)    The Commissioner's Motion for Summary Judgment be DENIED; and

(4)    The matter be REMANDED to the Commissioner of Social Security Administration to allow the Administrative Law Judge (ALJ) to conduct additional proceedings consistent with this Report and Recommendation.  On remand, the ALJ shall: (a) re-evaluate Plaintiff's RFC considering all of her exertional and nonexertional impairments; (b) re-assess Plaintiff's credibility and; if necessary, (c) submit a revised RFC to a vocational expert to determine what positions, if any, Plaintiff could perform in the national economy, given all of her legitimate physical and mental impairments as determined by the ALJ.

It be so ORDERED.

 */s/ Carol Sandra Moore Wells*
CAROL SANDRA MOORE WELLS
United States Magistrate Judge